IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-01405-LTB

JULIAN SAM,

      Petitioner,

v.

STEVE HARTLEY, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

      Respondents.

---

## ORDER ON PETITION FOR HABEAS CORPUS

---

Babcock, J.

      This matter is before me on Julian Sam's Petition Under 28 U.S.C. § 2254 For

Writ of Habeas Corpus ("Petition") (Docket No. 3).  Respondents answered the Petition

(Docket No. 16).  Petitioner filed no traverse.  As Petitioner is proceeding *pro se,* I must

construe his pleadings liberally and hold him to a "less stringent standard."  *Hall v.

Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991) (citing *Haines v. Kerner,* 404 U.S. 519,

520-21 (1972)).  After reviewing the pertinent portions of the record in this case

including the Petition, the Answer and the state court record (Docket No. 37), I conclude

that the Petition should be denied.

### I.  Background

      The following facts are taken from the statement of facts in Petitioner's opening

brief on direct appeal.  *See* Answer at Exhibit A.  Petitioner was charged in Denver City

and County Court with two counts of aggravated robbery, one count of first degree robbery, one count of second degree assault, and two counts of menacing.  The charges against Petitioner stemmed from a robbery wherein two masked and armed men entered a basement of a residential house and threatened and robbed the residents at gun point.  After the police arrived, they used tear gas inside the home to drive the gunmen out.  One of the men, Petitioner's co-defendant, exited the home and was apprehended by the police.  The police then entered the home and found Petitioner inside of a bedroom closet, hiding under a pile of clothing.

Petitioner's case was tried to a jury from October 26 to October 28, 1999, and the jury convicted Petitioner on all six charged counts.  Petitioner was then sentenced to two consecutive thirty-year terms on the robbery counts, a thirty-year concurrent sentence for the burglary count, sixteen years for the assault count, and six years for each of the two menacing counts.

Petitioner filed a timely notice of appeal with the Colorado Court of Appeals (the "CCA").  In his appeal, Petitioner raised six issues.  On December 6, 2001, the CCA affirmed the judgments, but vacated the portion of the sentence imposing consecutive sentences and remanded Petitioner's case to the trial court to clarify the mittimus.  *See People v. Sam*, No. 00CA0203 (Colo. App. Dec. 6, 2001) (unpublished decision) ("*Sam I*") (Answer at Exhibit C).  Petitioner filed a petition for writ of certiorari with the Colorado Supreme Court, which was denied on April 28, 2002 (Answer at Exhibit F).  The mandate issued on May 16, 2002 (Answer at Exhibit G).

Petitioner then filed a motion to quash his conviction pursuant to Colo. R. Crim. P. 35(c).  An evidentiary hearing was held on the motion on August 16, 2004.  The trial

2

court denied Petitioner's Rule 35(c) motion by written order on October 16, 2004 (Answer at Exhibit H).  Petitioner appealed the denial of his Rule 35(c) motion, and a panel of the CCA affirmed the trial court on December 14, 2006.  *See People v. Sam*, 04CA2489 (Colo. App. Dec. 14, 2006) (unpublished decision) (*"Sam II"*) (Answer at Exhibit L).  The Colorado Supreme Court denied the petition for writ of certiorari on April 2, 2007, and the mandate issued on April 5, 2007 (Answer at Exhibits N & O).

Petitioner then filed the instant action, alleging that: (1) he was denied his right to call witnesses; (2) due to the denial of his right to call witnesses, he was also denied his right to present a defense; (3) he was denied his right to due process by the trial court's rejection of his "mere presence" instruction; (4) he was denied the right to have the jury properly consider the lesser included offenses; (5) the jury was not properly instructed as to the elements of burglary under Colorado law; (6) cumulative error denied him a fair trial; and (7) he was denied the right to effective assistance of counsel due to numerous errors by counsel at trial.

## II.  Legal Standard

In the course of reviewing state criminal convictions in federal habeas corpus proceedings, a federal court does not sit as a super-state appellate court.  *See Estelle v. Mcguire*, 502 U.S. 62, 67-68 (1991); *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). "When a federal district court reviews a state prisoner's habeas petition pursuant to 28 U.S.C. § 2254 . . . . [it] does not review a judgment, but the lawfulness of the petitioner's custody *simpliciter*." *Coleman v. Thompson*, 501 U.S. 722, 730 (1991) (internal quotations and citations omitted).  The exhaustion of state remedies requirement in federal habeas cases dictates that a state prisoner must "give the state courts one full

3

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Because the Petition was filed after April 24, 1996, the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (the "AEDPA"), that statute governs my review. *Cannon v. Mullin,* 383 F.3d 1152, 1158 (10th Cir. 2004) (citing *Rogers v. Gibson,* 173 F.3d 1278, 1282 n. 1 (10th Cir. 1999)).  Under the AEDPA, a district court may only consider a habeas petition when the petitioner argues that he is "in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

Claims of legal error and mixed questions of law and fact are reviewed pursuant to 28 U.S.C. § 2254(d)(1).  *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question pursuant to § 2254(d)(1) is whether Petitioner seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final.  *See Williams v. Taylor*, 529 U.S. 362, 390 (2000).  Clearly established

federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id*. at 412.  Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case *sub judice*.  Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008).

If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1).  *See id*. at 1018.  If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law.  *See Williams*, 529 U.S. at 404-05.

> A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard* [*v. Boone*], 468 F.3d [665,] 669 [(10th Cir. 2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405).  "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.'" *Williams*, 529 U.S. at 405 (citation omitted).

> A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id*. at 407-08.  Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

5

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective one. *See Williams*, 529 U.S. at 409-10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. "[O]nly the most serious misapplications of Supreme Court precedent will be a basis for relief under § 2254." *Id.*

Claims of factual error are reviewed pursuant to 28 U.S.C. § 2254(d)(2). *See Romano v. Gibson*, 278 F.3d 1145, 1154 n.4 (10th Cir. 2002). Section 2254(d)(2) allows a court to grant a writ of habeas corpus only if the state court decision was based on an unreasonable determination of the facts in light of the evidence presented. Pursuant to § 2254(e)(1), I must presume that the state court's factual determinations are correct and Petitioner bears the burden of rebutting the presumption by clear and convincing evidence. "The standard is demanding but not insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller-El v. Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003)).

Finally, I "owe deference to the state court's *result*, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or

6

unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full *de novo* review of the petitioner's claims." *Id.*

### III.  Expansion of the Record

On March 12, 2009, Petitioner filed a "Motion to Amend Petition for Writ of Habeas Corpus," which did not seek to add additional claims to his Petition, but requested that the Court consider the legal arguments raised in his second postconviction proceeding (Docket No. 31).  These arguments relate to Petitioner's seventh claim of ineffective assistance of trial counsel.  Respondents did not object. On March 16, 2009, Magistrate Judge Tafoya granted Petitioner's motion, effectively treating it as a motion to expand the record pursuant to Rule 7 of the Rules Governing Section 2254 Cases (Docket No. 33).  The briefs from Petitioner's second postconviction proceeding have been submitted to the Court, along with the entire state court record, filed on May 28, 2009 (Docket No. 37).  I have considered the expanded record in its resolution of the issues presented in the Petition.

### IV.  Discussion

As a preliminary matter, Respondents do not challenge the timeliness of the Petition under the one-year limitation period set forth in 28 U.S.C. § 2244(d)(1), nor do they argue that Petitioner failed to exhaust his state court remedies pursuant to 28 U.S.C. § 2254(b).  Accordingly, I will address the merits of Petitioner's claims.

1. Claims One and Two

In his first two claims, Petitioner argues that his constitutional right to call

7

witnesses and present a defense were violated when the trial court excluded Petitioner's girlfriend, Nadiyah Berry, as a witness.  Petition at 5-7.  Petitioner apparently argues that his Sixth Amendment right to compulsory process and his Fifth Amendment right to due process were infringed upon by the trial court's ruling.  Like the Respondents, I find that claims one and two are substantially similar and will address them as one claim.

Petitioner's theory at trial was that he entered the victims' home with two other men with the intent of purchasing drugs.  He argued that it was the two other men, one of them unidentified, who assaulted and robbed the victims, and that Petitioner was not involved in the crimes.  In furtherance of this theory, on the third day of trial, Petitioner's counsel attempted to endorse Ms. Berry as a witness.  Defense counsel stated that Ms. Berry would testify that she had given Petitioner approximately $1000 one week prior to the robbery.  *See* Trial Court Transcript, Vol. 5, p. 10-12.  Counsel argued that this testimony would explain why Petitioner was in possession of over $1000 at the time of his arrest.  *Id.*  Counsel further argued that her testimony would rebut one of the victim's statements at trial, "[t]hey did not find what was mine," which counsel interpreted to mean that the money returned to the victim was not the actual money that had been stolen from him.  *Id.*  The prosecution objected to the witness on the grounds that she had not been endorsed until the third day of trial, she had not been sequestered from the other witnesses and had been present in the court room during trial, and that there had been no opportunity to speak with or investigate her.  *Id.* at 6.  The trial court then ruled that Petitioner would not be allowed to call Ms. Berry as a witness.  *Id.* at 19.  In excluding this testimony, the trial court found that the defense had been on notice of the issue of whether the money found on Petitioner belonged to him or the victims since the

8

time that the charges were filed. *Id.* The trial court further noted that to allow the

witness would "surprise" the prosecution, and that the prosecution should have had

prior notice of the witness in order to be able to rebut her defense. *Id.* at 20.

In addressing this claim, the CCA found that:

> Here, the evidence sought was clearly within defendant's control, and the record reflects consideration of the [People v.]Pronovost [773 P.2d 555 (Colo. 1989)] factors by the trial court. In excluding the witness, the trial court found that defendant was on notice that he was charged with stealing the victims' money from the time the information was filed. The court noted that defendant could not claim surprise regarding this issue because he should have known whether money found in his pockets was his from an alternate source. Thus, it was incumbent on the defense to investigate and timely endorse any witnesses in support of such a contention.

> The trial court also considered the prejudice to the prosecution that would result if the witness were allowed to testify, as well as any subsequent events that would mitigate prejudice. Because it was the final day of trial, the prosecutor did not have adequate opportunity to conduct an independent investigation into the veracity of the proposed testimony. The record also supports the trial court's ruling that the defense offer to allow the prosecution to talk with the proposed witness was not an adequate substitute for an independent investigation.

> Further, the court noted that defendant's girlfriend had been present in the courtroom throughout the trial and that any testimony she might offer would violate the court's witness sequestration order.

> Defendant's failure to timely endorse his girlfriend as a witness violated Crim. P. 16. The decision to exclude the girlfriend's testimony as a sanction for the violation was within the sound discretion of the trial court. The record supports the trial court's ruling. We cannot say that the exclusion constituted an abuse of discretion.

*Sam I* at 7-8.

"[F]ew rights are more fundamental than that of an accused to present witnesses

in his own defense and the preclusion of material defense witnesses from testifying is

the severest sanction for discovery violations." *Taylor v. Illinois*, 484 U.S. 400, 408

(1988) (citation omitted).  However, when the discovery violations are flagrant, such as being designed to conceal a plan to present fabricated testimony or being willful and motivated by a desire to obtain a tactical advantage, the Supreme Court has found that a preclusion sanction could be entirely appropriate and consistent with the Sixth Amendment.  *Id.*  In *Taylor*, the Supreme Court affirmed a trial court's exclusion of a witness whose name was not disclosed until the second day of trial, where the defense counsel admitted that he was aware of the witness's name prior to trial.  *Id.* at 403-05. Relying on *Williams v. Florida*, 399 U.S. 78, 81 (1970), the *Taylor* Court ruled that the discovery sanction of excluding the witness's testimony did not violate the defendant's rights under the Compulsory Process Clause of the Sixth Amendment.  *Id.* at 410. Likewise, in *Michigan v. Lucas*, the Court restated the proposition that excluding testimony as a sanction for violating a discovery rule does not violate the Sixth Amendment as long as the exclusion is necessary to prevent prejudice to the state and preserve the integrity of the judicial process.   500 U.S. 145, 151-52 (1991); *see also United States v. Bautista*, 145 F.3d 1140, 1151-52 (10th Cir. 1998) ("[T]he right to present defense witnesses is not absolute.  A defendant must abide by the rules of evidence and procedure." (citation omitted)).

With the above standards in mind, I find that the CCA reasonably applied *Taylor v. Illinois* to the facts of this case.  Although Petitioner's counsel identified Ms. Berry as a witness as soon as Petitioner informed him that she was available, counsel nevertheless violated Colorado Rule of Criminal Procedure 16(II)(c), which requires that defense witnesses be disclosed no later than thirty days before trial.  Because the prosecution had no information about this witness and no opportunity to interview or

investigate her prior to trial, the CCA reasonably concluded that allowing her to testify about the money she allegedly gave to Petitioner would have prejudiced the State. Also, because of its late discovery and because Ms. Berry had not been sequestered during the trial, her testimony calls into question the integrity of the judicial process. *See Williams*, 399 U.S. at 81 ("Given the ease with which an alibi can be fabricated, the State's interest in protecting itself against an eleventh-hour defense is both obvious and legitimate."). Accordingly, I find that the CCA's decision was not contrary to or an unreasonable application of clearly established federal law as set forth in *Taylor v. Illinois*, and Petitioner is not entitled to federal habeas relief on claims one and two.

2. Claim Three

In his third claim, Petitioner argues that his right to due process was violated by the trial court's refusal to give his "mere presence" instruction to the jury. Petition at 7.

At trial, defense counsel tendered a proposed jury instruction which provided, "[t]he guilt of a defendant cannot be established by mere presence at the scene of a crime, even with knowledge that a crime is being committed." Trial Court Record, Vol. 1 at p. 22. Defense counsel argued that the jury instruction was being proffered in lieu of a theory of the case instruction. Trial Court Record, Vol. 5, at p. 80. Citing *People v. Simien*, 671 P.2d 1021, 1024 (Colo. App. 1983), the trial court rejected this jury instruction. *Id.* In *Simien*, the court held that "where proper instructions are given concerning the presumption of innocence, the prosecution's burden of proof, reasonable doubt, the essential elements of the offenses, and the definition of the requisite *mens rea*, the so called 'mere presence' instruction is necessarily encompassed by the instructions as a whole, and need not be given." 671 P.2d at 1024.

11

In addressing this claim, the CCA held that, "the jury found defendant guilty of robbery, burglary, assault, and menacing.  Because the instructions on the elements of these crimes required the jury to find that defendant took affirmative actions, we conclude that the jury did not base its guilty verdicts on defendant's mere presence at the scene." *Sam I* at 9.

An error in a trial proceeding must be one that implicates "fundamental fairness" in order to constitute a due process violation.  *Estelle*, 502 U.S. at 73; *see also Calderon v. Coleman*, 525 U.S. 141, 145 (1998) ("a federal court may grant habeas relief based on trial error only when that error 'had substantial and injurious effect or influence in determining the jury's verdict'" (citation omitted)).  In the context of jury instructions, fundamental fairness requires that a criminal defendant be provided a meaningful opportunity to present a complete defense, and incorrect jury instructions may divest a defendant of this opportunity.  *See Mathews v. United States*, 485 U.S. 58, 63 (1988); *see also Bradley v. Duncan*, 315 F.3d 1091, 1096 (9th Cir. 2002) (finding that a court's failure "to correctly instruct the jury on [a] defense may deprive the defendant of his due process right to present a defense.").  However, federal habeas relief is available only when "'the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" *Estelle*, 502 U.S. at 71 (quoting *Cupp*, 414 U.S. at 147).  The significance of the omission of a jury instruction may be evaluated by comparison with the instructions that were given.  *See Henderson v. Kibbe*, 431 U.S. 145, 156 (1977).  Finally, the failure to give a proffered jury instruction "is less likely to be prejudicial than a misstatement of the law."  *Id.* at 155.

Upon review of the jury instructions in this case, I find and conclude that they are

12

not "so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." *Nguyen v. Reynolds*, 131 F.3d 1340, 1357 (10th Cir. 1997) (internal citations omitted). The effect of the instructions, when taken as a whole, was to require the prosecution to prove, beyond a reasonable doubt, that not only was Petitioner present at the scene of the robbery, but that he took affirmative steps to participate in the crime, including, *inter alia*, that he: (1) assaulted or menaced another person (Instruction No. 14), (2) knowingly took anything of value from the person or presence of the victim by the use of force, threats, or intimidation, and knowingly put the victim in reasonable fear of death or bodily injury, by the use of force or threats or intimidation, with a deadly weapon (Instruction No. 16); and (3) with the intent to cause bodily injury to another person, caused such injury to the victim by means of a deadly weapon (Instruction No. 20). *See* Trial Court Record, Vol. 1 at 23-54. Further, as shown above, the CCA thoroughly reviewed the instructions at issue and determined that the content of Petitioner's tendered instruction was encompassed in other jury instructions and, therefore, its omission did not deprive Petitioner of his right to have the jury instructed on his defense theory. I find that the decision was not contrary to or an unreasonable application of clearly established federal law, nor was it an unreasonable determination of the facts presented in the state court proceeding. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

    3. Claim Four

    In his fourth claim, Petitioner asserts that his right to due process was violated when "the trial court allowed the prosecutor to encourage jurors to disregard the [jury] instructions completely." Petition at 8. He apparently objects to the prosecutor's

comments during closing argument regarding the lesser included offenses. *Id.* at 9.

During rebuttal closing argument, the prosecutor made reference to the lesser

included offenses as follows:

> Then you have a bunch of what are called lesser included offenses, and after each there are elements that say I have to prove this and that and the other that are numbered.

> Then the next page that you will see will say, if it necessarily includes a lesser offense, such as first degree burglary and a lesser offense of criminal trespass.

> Aggravated robbery has a lesser offense of robbery. The lesser offenses, you can only convict on those if you believe there was no gun involved, or Mr. Sam was just in there without the intention to commit theft; he just happened to be there. Those are the lesser included offenses. Read them. They don't have anything to do with the facts in this case, they're just there, and that's it for the complicity instructions. It's just as to that one count.

Trial Court Record, Vol. 5 at p. 118. After these comments, defense counsel moved for

a mistrial "based upon the district attorney's implication that [the defense] submitted the

lesser include [sic] offenses. It's reversible error to imply the defense submitted lesser

included offenses." *Id.* at 119. The trial court denied the motion for mistrial. *Id.*

In addressing this claim, the CCA noted that pursuant to Colorado law, it is

improper for a court to characterize jury instructions as being propounded by the

defendant, and therefore, less worthy of the jury's consideration. *Sam I* at 10.

However, the CCA noted that it was the prosecutor, not the trial court, who commented

on the instructions, and then found that the prosecutor's comments did not "label the

instructions as proffered by defendant." *Id.* at 11.

"Inappropriate prosecutorial comments, standing alone, would not justify a

reviewing court to reverse a criminal conviction obtained in an otherwise fair

14

proceeding." *United States v. Young*, 470 U.S. 1, 11 (1985).  Pursuant to the rule set

forth in *Donnelly v. DeChristoforo*, 416 U.S. 637, 642-48 (1974), habeas relief is

available for claims of prosecutorial misconduct only when the misconduct is so

egregious that it renders the entire trial fundamentally unfair.  The court must "consider

the probable effect the prosecutor's statement would have on the jury's ability to judge

the evidence fairly." *Tillman v. Cook*, 215 F.3d 1116, 1129 (10th Cir. 2000) (quoting

*Moore v. Reynolds*, 153 F.3d 1086, 1113 (10th Cir. 1998)).  In making this assessment,

the Court must consider whether "the prosecutor's argument . . . manipulate[d] or

misstate[d]" the evidence, "whether it impacte[d] other specific rights of the accused

such as the right to counsel or the right to remain silent," whether "the objectionable

content was invited by or responsive to the opening summation of the defense," and

whether "[t]he weight of the evidence against petitioner was heavy." *Darden v.*

*Wainwright*, 477 U.S. 168, 181-82 (1986).  Finally, allegations of prosecutorial

misconduct are mixed questions of law and fact.  *See Fero v. Kerby*, 39 F.3d 1462,

1473 (10th Cir. 1994).

 With this standard in mind and having considered the entire record, I find and

conclude that Petitioner has made no showing that the CCA's rejection of this claim was

contrary to or an unreasonable application of the governing *Donnelly* standard.  The

prosecutor's comments regarding the lesser included offenses were innocuous and

extremely brief.  At no time did the prosecutor indicate that the lesser included offenses

were proffered by Petitioner.  Moreover, the evidence of Petitioner's guilt of aggravated

robbery presented at the trial was substantial.  Petitioner has not shown that the

prosecutor's comments during closing argument rendered his trial fundamentally unfair.

Because the CCA's decision was not contrary to or an unreasonable application of the

*Donnelly* standard, and the decision was not based on an unreasonable determination

of the facts in light of the evidence presented at his trial, Petitioner is not entitled to

habeas relief on this claim.

    4.  Claim Five

    In his fifth claim, Petitioner argues that the trial court failed to properly instruct the

jury on the elements of theft, the underlying crime related to the burglary charge, in

violation of Petitioner's right to due process.  Petition at 9.

    In addressing this claim, the CCA held as follows:

> While we agree that the court's failure to instruct the jury on the
> elements of theft was error, we conclude that here, such error does not
> warrant reversal.
>
> A person commits first degree burglary if the person knowingly
> enters unlawfully, or unlawfully remain in after a lawful or unlawful entry, a
> building or occupied structure with intent to commit therein a crime.
> Section 18-4-202(1), C.R.S. 2001.
>
> Here, the trial court instructed the jury that the elements of burglary
> included the intent to commit the underlying crime of theft, but the
> instruction omitted the elements of the crime of theft.  Because defendant
> failed to preserve this error for appeal, the error is subject to plain error
> analysis.  See People v. Dunlap, 975 P.2d 723 (Colo. 1999).
>
> Despite the trial court's oversight, omission of the elements of theft
> does not, in these circumstances, constitute plain error.  The jury found
> that defendant committed aggravated robbery.  We conclude that implicit
> in the guilty verdict for aggravated robbery was a finding that defendant
> knowingly took something of value from the person or presence of the
> victims by force, threats, or intimidation.  See § 18-4-301, C.R.S. 2001.
> The primary element distinguishing theft from robbery is that theft requires
> the intent to permanently deprive.  Section 18-4-401, C.R.S. 2001.  Thus,
> for the omission to have been meaningful, the jury, after already
> determining that defendant took money from the victim by force, would
> have to have believed that defendant did not intend to permanently
> deprive the victim of the money.  Such a conclusion is so antithetical to the

>facts of this case that we conclude the omission does not constitute plain error so prejudicial to the defendant as to cast serious doubt on the reliability of the judgment of conviction.

*Sam I* at 12.

It is undisputed that the trial court erred in failing to instruct the jury as to the elements of theft.  However, as previously set forth, a petitioner attempting to overturn a state conviction because of prejudice from an erroneous jury instruction bears a heavy burden.  *See, e.g., Nguyen*, 131 F.3d at 1357.  "[T]he fact that the instruction was allegedly incorrect under state law is not a basis for habeas relief."  *Estelle,* 502 U.S. at 71-72.   Instead, an erroneous jury instruction does not entitle a petitioner to federal habeas corpus relief unless "the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Henderson*, 431 U.S. at 154; *see also Nguyen*, 131 F.3d at 1357.  In making this determination, the Court must consider the jury instruction "in the context of the instructions as a whole and the trial record."  *Estelle*, 502 U.S. at 71.  Further, the burden on a petitioner attacking a state court judgment based on a failure to give a jury instruction is especially great because "'[a]n omission, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law."  *Maes v. Thomas*, 46 F.3d 979, 984 (10th Cir. 1995) (quoting *Henderson*, 431 U.S. at 155).  Finally, even if the erroneous instruction rises to the level of a constitutional error, the Court must then conduct its own harmless error analysis pursuant to *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993), to determine whether the improper instruction "had a substantial and injurious effect or influence in determining the jury's verdict."  *See Fry v. Pliler*, 551 U.S. 112 (2007).

In 1999, the year of Petitioner's conviction, the elements of theft according to

Colorado law were, in relevant part, "[a] person commits theft when he knowingly obtains or exercises control over anything of value of another without authorization, or by threat or deception, and: (a) Intends to deprive the other person permanently of the use or benefit of the thing of value; . . . ."  Colo. Rev. Stat. § 18-4-401 (1999).  Petitioner was convicted of first degree robbery pursuant to Colo. Rev. Stat.  § 18-4-202(1) (1999), which requires proof that "the person knowingly enters unlawfully, or remains unlawfully after a lawful or unlawful entry, in a building or occupied structure with intent to commit therein a crime" and that "the person or another participant is armed with explosives or a deadly weapon."  Petitioner was also convicted of aggravated robbery pursuant to Colo. Rev. Stat. § 18-4-301(1) (1999), which requires proof that a person "knowingly takes anything of value from the person or presence of another by the use of force, threats, or intimidation . . . ."

Like the CCA, I find and conclude that the element that distinguishes the crime of theft from the crime of robbery is that theft requires proof that a defendant intended to permanently deprive a person of the thing of value.  The evidence presented at trial established the following: that Petitioner and his co-defendant, Mr. Fernandez, entered the victims' home while armed with guns.  They pointed their guns at the victims and demanded their money.  After hitting one victim twice on the head with his gun, Petitioner and Mr. Fernandez bound the victim with duct tape and took his wallet and the keys to his car.  Petitioner then stuck his gun in the second victim's mouth, while Mr. Fernandez took his wallet and bound him with duct tape.  After finding that Petitioner committed these acts, for the jury to also find that he did not intend to permanently deprive the victims of their money would be a result "so antithetical to the facts of this

18

case" that for Petitioner to suggest this result would have occurred had the instruction been included is insupportable. *Sam I* at 12. Accordingly, after considering the omitted jury instruction of theft "in the context of the instructions as a whole and the trial record," *Estelle*, 502 U.S. at 71, I find and conclude that this omission did not "by itself so infect[] the entire trial that the resulting conviction violates due process." *Henderson*, 431 U.S. at 154. Because I find that the omission of this instruction did not rise to the level of a constitutional error, I need not conduct a harmless error analysis pursuant to *Brecht v. Abrahamson*. Accordingly, I find and conclude that the CCA's decision was not legally unreasonable, nor was it an unreasonable determination of the facts, and habeas relief is not warranted on this claim.

5. Claim Six

In his sixth claim, Petitioner contends that he was denied his right to due process by cumulative error at trial. Petition at 10.

The CCA disagreed with Petitioner's contention that cumulative error denied him the right to a fair trial, finding that "[i]n view of our disposition of the foregoing issues, we conclude that the errors combined did not prevent defendant from receiving a fair trial." *Sam I* at 12.

I must defer to the CCA's rulings "unless [they] constitute[] an unreasonable application of the cumulative-error doctrine." *Thornburg v. Mullin*, 422 F.3d 1113, 1137 (10th Cir. 2005). "Cumulative error analysis is an extension of harmless error and conduct[s] the same inquiry as for individual error, focusing on the underlying fairness of the trial." *Darks v. Mullin*, 327 F.3d 1001, 1018 (10th Cir. 2003) (internal quotation marks and citation omitted). "Cumulative error analysis merely aggregates all the errors

19

that individually have been found to be harmless, and therefore not reversible, and it
analyzes whether their cumulative effect on the outcome of the trial is such that
collectively they can no longer be determined to be harmless." *Welch v. Sirmons*, 451
F.3d 675, 710 (10th Cir. 2006) (internal quotation marks and citation omitted).
However, cumulative error analysis applies where there are two or more actual errors; it
does not apply to the cumulative effect of non-errors. *Moore v. Reynolds*, 153 F.3d
1086, 1115 (10th Cir. 1998). The court evaluates whether cumulative errors were
harmless by determining whether a criminal defendant's substantial rights were
affected. *Id.* Having reviewed the entire record, I find and conclude that the CCA's
rulings do not constitute an unreasonable application of the cumulative-error doctrine,
nor were they unreasonable determinations of the facts presented in the state court
proceeding. Accordingly, I find and conclude that Petitioner is not entitled to federal
habeas relief on this claim, and it must be dismissed.

     6. Claim Seven

     In his seventh claim, Petitioner argues that he was denied effective assistance of
counsel, based upon the following errors allegedly made by counsel at trial: (1) failure to
object when the elements of theft were omitted from the jury instructions; (2) failure to
offer a "mere presence" jury instruction; (3) failure to object to the introduction of two
guns at trial; (4) trial counsel's objection to a ski mask; (5) numerous allegations that
counsel failed to investigate many aspects of Petitioner's case; and (6) failure to attack
the credibility of a victim. Petition at 10-11.

     It was clearly established when Petitioner was convicted that a defendant has a
right to effective assistance of counsel. *See Strickland v. Washington*, 466 U.S. 668

(1984).  To establish that his trial counsel was ineffective, Petitioner must demonstrate both that counsel's performance fell below an objective standard of reasonableness and that counsel's deficient performance resulted in prejudice to his defense.  *See id.* at 687-88.  In addition, "[j]udicial scrutiny of counsel's performance must be highly deferential."  *Id.* at 689.  There is a "strong presumption" that counsel's performance falls within the range of "reasonable professional assistance."  *Id.*  It is Petitioner's burden to overcome this presumption by showing that the alleged errors were not sound strategy under the circumstances.  *See id.*  Under the prejudice prong, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.  If Petitioner fails to satisfy his burden with regard to either prong of the Strickland test, his ineffective assistance of counsel claim must be dismissed.  *See id.* at 697.  Finally, ineffective assistance of counsel claims are mixed questions of law and fact.  *See id.* at 698.

1.  Burglary Instructions

Here, Petitioner argues that trial counsel was ineffective for failing to object to jury instructions that omitted the underlying elements of the crime of theft.  Petition at 10.

In addressing this claim raised during Petitioner's first postconviction proceeding, the CCA held as follows:

> In his direct appeal, defendant argued the trial court violated his constitutional right to due process and trial by jury by failing to instruct the jury on the elements of theft, the underlying crime related to the burglary charge.  The division concluded the trial court's failure to instruct the jury on the elements of theft was error, but the error did not warrant reversal of his conviction:
> . . . .

21

Thus, even if we assume counsel's performance was deficient in failing to object to the burglary instruction, we cannot conclude the error prejudiced defendant, because the division, in resolving defendant's direct appeal, concluded the instruction given did not prejudice him. See People v. Garcia, [815 P.2d 937 (Colo. 1991)] (if a court determines a defendant failed to show prejudice, it may resolve the claim on that basis alone).

*Sam II* at 4-5.

"The purpose of ineffectiveness review is not to grade counsel's performance." *Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) (citations omitted). "To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable." *Id.* However, to prove ineffective assistance of counsel, more than a simple mistake of law is needed. *See Bullock v. Carver*, 297 F.3d 1036,1048 (10th Cir. 2002). Instead, under the prejudice prong, Petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Like the CCA, I find and conclude that Petitioner was not prejudiced by the omission of the underlying elements of theft because the jury instructions, when taken as a whole, encompassed the elements of theft such that the jury implicitly convicted Petitioner of this crime. Therefore, even if Petitioner's counsel made a legal mistake in failing to object to the deficient jury instructions, Petitioner cannot establish that he was prejudiced by this mistake. *See Rompilla v. Beard*, 545 U.S. 374, 405 (2005) (Kennedy, J., dissenting) (noting that the defendant bears the burden of proving prejudice); *see also Strickland*, 466 U.S. at 697 ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."). I find and conclude that decision of the CCA that defense

counsel was not ineffective in this regard did not result in a decision that was contrary

to, or involved an unreasonable application of, *Strickland.*

        2.  "Mere Presence" Instruction

Here, Petitioner argues that trial counsel was ineffective for failing to offer "a

theory of defense jury instruction based on 'mere presence' due to counsel's lack of

preparation for trial."  Petition at 10.

In addressing this claim, the CCA first noted that counsel did, in actuality, tender

a "mere presence" instruction, which was rejected by the trial judge.  It further noted that

upon direct appeal, a division of the CCA rejected Petitioner's claim that he was

convicted based upon his mere presence at the crime scene.  *Sam II* at 6.  Accordingly,

the CCA concluded that the absence of this instruction did not prejudice Petitioner.  *Id.*

Further, the CCA found as follows:

> In any event, the record belies defendant's contention counsel
> failed to establish a theory of defense.  In both opening and closing
> statements, counsel maintained defendant was present at the crime
> scene, but was unaware a crime was being committed.  Counsel argued
> neither victim could positively identify defendant as the one who robbed
> him, there was no physical evidence linking defendant to the robber, and
> there was a third person present who committed the crimes.  In support of
> his theory, counsel cross-examined the victims extensively on their
> uncertain recollections of the crime.  Hence, we conclude counsel
> established a theory of defense.

*Id.* at 7.

Petitioner offers nothing more than his single conclusory allegation to

demonstrate that counsel was unprepared for trial.  Conclusory allegations without

supporting factual averments are insufficient to support a claim of ineffective assistance

of counsel.  *United States v. Fisher*, 38 F.3d 1144, 1147 (10th Cir. 1994).  Further,

Petitioner has failed to present any clear and convincing evidence to overcome the presumption of correctness that attaches to the state court's factual findings with respect to whether defense counsel established a theory of defense.  I find and conclude that the state court's determination that Petitioner failed to demonstrate that his counsel's performance was deficient as a result of his alleged failure to develop a theory of defense did not result in a decision that was contrary to, or an unreasonable application of, *Strickland*.

   3.  Failure to Object

   In this claim, Petitioner argues that trial counsel failed to object to the introduction at trial of two guns that were not located by police during their search of the victims' house, but brought to the police by the victims two days after the crime.  Petition at 10.

   In addressing this claim, the CCA found as follows:

   Defendant contends he received ineffective assistance because counsel did not file a motion to suppress the guns the victims found in their house and gave to police.  However, defendant did not have viable grounds to suppress the guns, and counsel properly declined to file a motion to suppress.

   Defendant does not cite any legal authority in support of his claim. He relies on his own testimony at the evidentiary hearing that he told counsel the guns were not his and asked counsel to file a motion to suppress.

   It is unclear on what basis the guns could have been suppressed. The central inquiry in determining whether the Fourth Amendment protects the defendant is whether the defendant had a reasonable expectation of privacy from government intrusion in the area searched.  (citation omitted). Here, defendant had no reasonable expectation of privacy in the victims' house, and the guns were not found by police.

   Defendant also contends counsel should have investigated how the victims obtained the guns, but does not explain what investigation should have been pursued or what information would likely have been uncovered.

> . . . Defendant has failed to show deficient performance or resulting prejudice on this claim.

*Sam II* at 11-12.

When the Court analyzes strategic decisions there is a deference to the professional judgment of the attorney. *See Cargle v. Mullin*, 317 F.3d 1196, 1202 (10th Cir. 2003). Further, as the Supreme Court has observed, "counsel . . . may disserve the interests of his client by attempting a useless charade." *United States v. Cronic*, 466 U.S. 648 n. 19 (1984). Petitioner's counsel may have thought correctly that pursuing a motion to suppress was "a useless charade," and this Court is not in the position to second-guess strategic decisions made at trial. *Id.*; *Cargle*, 317 F.3d at 1202. The state court's determination that Petitioner failed to demonstrate that his counsel's performance was deficient as a result of his failure to file a motion to suppress did not result in a decision that was contrary to, or an unreasonable application of, *Strickland*.

4. Objection to Ski Mask

In this claim, Petitioner contends that trial counsel improperly objected "to favorable evidence in the form of a ski mask that the victims found in the house after [Petitioner] was arrested. The ski mask supported [Petitioner's] claim that there was a third person that was responsible for the assault and robbery." Petition at 10.

In addressing this claim, the CCA found as follows:

> In his opening statement, counsel admitted defendant was in the victims' house at the time of the crime, but claimed he was unaware a crime was being committed. Counsel argued there was a third person in the house who was also African-American, like defendant, but, unlike defendant, this third person was wearing a ski cap.

During the testimony of one of the victims, the prosecution sought to introduce a ski cap the victim had recently found in her house. Counsel objected to this evidence because he had not been given notice of its existence during discovery. Counsel requested the prosecution not be allowed to introduce the cap in its case-in-chief, but that counsel be permitted to use the cap in the defense case-in-chief, if, depending on the circumstances, its admission would strengthen defendant's case. The court sustained counsel's objection because the prosecution failed to comply with discovery deadlines.

Thus, the record reveals counsel's successful objection to the prosecution's attempt to admit the ski cap was a matter of trial strategy. (Citations omitted).

*Sam II* at 12-13.

"'Tactical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance." *Hatch v. Oklahoma*, 58 F.3d 1447, 1459 (10th Cir. 1995) (quoting *United States v. Ortiz Oliveras*, 717 F.2d 1, 3 (1st Cir. 1983)). This deference to an attorney's strategic trial decision will stand unless the decision itself was objectively unreasonable. *Bullock*, 297 F.3d at 1047. But "[w]here it is shown that a particular decision was, in fact, an adequately informed strategic choice, the presumption that the attorney's decision was objectively reasonable becomes 'virtually unchallengeable.'" *United States v. Nguyen*, 413 F.3d 1170, 1181 (10th Cir. 2005) (citing *Bullock*, 297 F.3d at 1044). Petitioner has made no showing that trial counsel's objection to the ski mask was not a matter of trial strategy, and he has failed to present any clear and convincing evidence to overcome the presumption of correctness that attaches to the state court's factual findings with respect to this claim. I find and conclude that the state court's determination that counsel was not deficient as a result of his objection to the ski mask did not result in a decision that was contrary to, or an unreasonable application of, *Strickland*.

26

5.  Failure to Investigate

Petitioner argues that he received ineffective assistance of counsel due to trial

counsel's failure to: (a) to investigate and endorse Ms. Berry as a witness prior to trial;

(b) to interview Petitioner's co-defendant; (c) investigate the identity of the third person

allegedly also present during the robbery; and (d) investigate the crime scene.  Petition

at 10-11.

"In any ineffectiveness case, a particular decision not to investigate must be

directly assessed for reasonableness in all the circumstances, applying a heavy

measure of deference to counsel's judgments."  *Strickland*, 466 U.S. at 691.  "[S]trategic

choices made after thorough investigation of law and facts relevant to plausible options

are virtually unchallengeable; and strategic choices made after less than complete

investigation are reasonable precisely to the extent that reasonable professional

judgments support the limitations on investigation."  *Id.* at 690-91.

A.  Failure to Interview Ms. Berry, Co-Defendant and Third Person

In addressing this claim, the CCA found as follows:

>   At the evidentiary hearing on his Crim. P. 35(c) motion, defendant
> conceded on cross-examination he failed to provide contact information
> for his girlfriend [Ms. Berry] and never told defense counsel his co-
> defendant had information useful to his case.  And defendant knew neither
> the name nor the whereabouts of the third person he claims was present
> in the victims' house and committed the crimes.
>        . . . .
>
>   At the hearing on his Crim. P. 35(c) motion, defendant did not
> produce any evidence his girlfriend, co-defendant, or the third person was
> willing to testify, nor did he make an offer of proof with respect to the
> substance, credibility, or admissibility of their anticipated testimony.  Thus,
> defendant had failed to demonstrate counsel's failure to investigate or

interview these witnesses prejudiced him.

*Sam II* at 8-9.

The Tenth Circuit has noted that "counsel cannot be faulted for failing to raise claims as to which the client has neglected to supply the essential underlying facts . . . [because] clairvoyance is not required of effective trial counsel." *United States v. Miller*, 907 F.2d 994, 999 (10th Cir. 1990) (quotations omitted).  Further, a petitioner who challenges his counsel's effectiveness because counsel decided not to interview a potential witness, must establish the decision not to interview was unreasonable from counsel's perspective at the time the decision was made. *Anderson v. Attorney Gen. of Kansas*, 425 F.3d 853, 859 (10th Cir. 2005) (citing *Chambers v. Armentrout*, 907 F.2d 825, 828 (8th Cir. 1990)).  Here, the CCA found that defendant had failed to provide information regarding these potential witnesses to defense counsel.  Petitioner has failed to present any clear and convincing evidence to overcome the presumption of correctness that attaches to the state court's factual findings with respect to this claim.  Petitioner is unable to establish that it was unreasonable for counsel to not interview or investigate these witnesses, because it was Petitioner's own failure to provide information that resulted in counsel's actions.  Therefore, I find and conclude that the state court's conclusion that defense counsel was not ineffective with respect to his failure to investigate or call these witnesses is neither contrary to nor an unreasonable application of *Strickland*.

> B.    Failure to Investigate the Crime Scene

The CCA found the following:

> At trial, the prosecution introduced photographs of a broken fence

28

and a broken window at the victim's house.  Defendant claims he did not break a fence or a window to enter the victims' house, and counsel should have objected to the admission of these photographs.  It is unclear on what basis counsel could have objected to the photographs.

Defendant's argument that, had counsel investigated the crime scene, counsel could have explained why defendant was at the victims' house and thereby rebutted the prosecution's theory he broke into the house, is speculative and conclusory, and thus does not support a claim of ineffective assistance.  (citations omitted).

*Sam II* at 10-11.

A habeas petitioner cannot succeed on an ineffective assistance claim by showing that there was some evidence that the trial counsel failed to investigate.  Instead, a petitioner must demonstrate that the failure to investigate additional evidence was objectively unreasonable and would have produced a different result at trial.  *Strickland*, 466 U.S. at 687.  Petitioner fails to show that an additional investigation into the broken fence and broken window could have produced a different result at trial, and therefore he fails to show that this information "undermine[s] confidence in the outcome" of his trial.  *Id.* at 694.  Accordingly, I find and conclude that the state court's conclusion that defense counsel was not ineffective with respect to his alleged failure to investigate the crime scene is neither contrary to nor an unreasonable application of *Strickland*.

### 6.  Failure to Challenge Victim's Credibility

Here, Petitioner asserts that counsel was ineffective for failing to attack the credibility of one of the victims on the grounds that the victim was an illegal immigrant and had provided police with a fake name.  Petition at 11.  Petitioner raised this claim during his second postconviction proceeding.  In addressing this claim, the CCA found the following:

>    [T]he transcript of the August 16, 2004, postconviction hearing
> reflects that defendant testified regarding trial counsel's purported failure
> to conduct background checks of the victims, find out whether they were
> employed, or investigate alias names they might have been using.
>    . . . . .
>
>    [T]o the extent defendant argues that postconviction counsel should
> have investigated the criminal records of the victims, the record reflects
> that trial counsel filed a motion for discovery of impeachment information,
> including all records of prior criminal convictions or pending criminal cases
> of all lay witnesses.  The prosecution is obligated under Crim. P.
> 16(I)(a)(1)(V) to disclose to defense counsel the criminal histories of any
> person it intends to call as a witness.   (citation omitted).  There is no
> indication in the record that the prosecution did not fulfill its Crim. P. 16
> obligations in this regard.  Therefore, defendant has not established a
> credible claim that either postconviction or trial counsel was ineffective on
> this basis.
>
>    Further, . . . . trial counsel asked for permission to cross-examine
> the victims regarding any use of false names.  The prosecution confessed
> the issue.  Thus, the record of the trial proceedings belies defendant's
> claim that trial counsel failed to conduct any investigation into the victims.

Trial Court Record, Vol. 1 at 364-66.

   The CCA found that Petitioner's counsel investigated the victims' criminal

histories and use of aliases, and that to the extent the prosecution had such

information, it was disclosed to the defense.  Further, the CCA found that the issue of

whether the victims had used false names was confessed by the prosecution.  The

CCA therefore found no evidence that Petitioner's counsel had not conducted a full

investigation into this issue.  Petitioner has failed to present any clear and convincing

evidence to overcome the presumption of correctness that attaches to the state

court's factual findings with respect to this claim.  Therefore, I find and conclude that

the state court's conclusion that defense counsel was not ineffective with respect to

his failure to investigate the victims is neither contrary to nor an unreasonable

application of *Strickland.*

Accordingly, it is ORDERED:

1.      Petitioner Julian Sam's Petition Under 28 U.S.C. § 2254 For Writ of Habeas

Corpus (Docket No. 3) is DENIED.

2.      This case is DISMISSED WITH PREJUDICE.

Dated:  June 24, 2009

BY THE COURT:

    s/Lewis T. Babcock
Lewis T. Babcock
United States District Judge